76 N.J. Super. 149 (1962)
183 A.2d 878
PAUL A. GREISMAN, D.O., PLAINTIFF,
v.
THE NEWCOMB HOSPITAL, A NON-PROFIT CORPORATION OF THE STATE OF NEW JERSEY, BOARD OF TRUSTEES OF THE NEWCOMB HOSPITAL, A NON-PROFIT CORPORATION OF THE STATE OF NEW JERSEY, AND MEDICAL STAFF OF THE NEWCOMB HOSPITAL, AN UNINCORPORATED ASSOCIATION OF THE STATE OF NEW JERSEY, JOINTLY, SEVERALLY AND IN THE ALTERNATIVE, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided August 17, 1962.
*152 Mr. Marvin D. Perskie appeared for plaintiff (Messrs. Perskie and Perskie, attorneys).
Mr. Joseph Adamo appeared for defendants Newcomb Hospital and Board of Trustees of Newcomb Hospital (Messrs. Adamo and Pagliughi, attorneys).
Mr. Stanley Brotman appeared for defendant Medical Staff of the Newcomb Hospital (Mr. Gerald Eisenstat, on the brief; Messrs. Shapiro, Brotman and Eisenstat, attorneys).
*153 CAFIERO, A.J.S.C.
This is on cross-motions for summary judgment. They arise out of a complaint in lieu of prerogative writs to review the legality and constitutionality of the action of the medical staff and the board of trustees of the Newcomb Hospital in Vineland, New Jersey, in refusing to issue or to consider an application by the plaintiff for admission as a member to the courtesy medical staff of the Newcomb Hospital, thereby depriving him of the customary use of the facilities and services of the hospital which is extended to such members.
The parties agree that the issue which is to be resolved is the reasonableness of a requirement of the by-laws that includes as basic qualifications for membership on the courtesy medical staff of the hospital that the applicant be a graduate of a medical school approved by the American Medical Association, and a full or associate member of the county medical society.
The parties have stipulated that the plaintiff does not have such qualifications, but that he is a graduate of the Philadelphia College of Osteopathy, fully licensed to practice medicine and surgery in New Jersey; that he resides in the City of Vineland, New Jersey; practices his profession in that city, and also maintains offices for that purpose in Newfield, New Jersey. It is further stipulated that the Newcomb Hospital has 160 beds and is the only hospital in the City of Vineland; that the other hospitals in the general area are in the municipalities of Millville, Bridgeton and Elmer, which are located at a distance of approximately 5, 12 and 14 miles, respectively, from the Vineland Hospital. It is also stipulated that the hospital is an incorporated non-profit institution and affected with the public interest in that it treats members of the general public who apply for and require its services. Payment is made by its patients for the services rendered. Indigents residing elsewhere in the county outside the City of Vineland are paid for by the County of Cumberland, and the *154 City of Vineland pays a yearly sum for its indigents. The hospital also solicits and receives funds in the form of subscriptions, endorsements, contributions and donations from members of the general public. Neither the City of Vineland nor the County of Cumberland has any voice in the government of the hospital, nor was it created or endowed by either of the said governments.
The purpose of the stipulation is to determine the applicability of the principles of law set forth in Falcone v. Middlesex County Medical Society, 62 N.J. Super. 184 (Law Div. 1960), affirmed 34 N.J. 582, 598 (1961).
The plaintiff alleges that the above basic qualifications are arbitrary, capricious, unreasonable and void as against the public policy of this State under the holdings in Falcone, supra.
The defendants contend in substance that Falcone is not applicable to the facts in this matter; that its rationale and holding should be restricted to cases involving facts similar to those involved in that case; that the foregoing preliminary or basic qualifications are reasonable and valid, and that the status of the defendant hospital as a private hospital prevents any judicial scrutiny by this court of the reasonableness or unreasonableness of its bylaws.
In the alternative, the defendants also contend that if the ruling in Falcone is determined to be applicable, these provisions of its bylaws are reasonable and valid and do not contravene the public policy or public welfare of this State.
Although other motions have been made in this action, the decision on these cross-motions makes their determination unnecessary.
Stated briefly, plaintiff contends (1) that the Newcomb Hospital and its medical staff is an organization of such a nature that this court should intervene to protect the public, and (2) that his exclusion from the medical staff of Newcomb Hospital results in substantial injury to him.
*155 If the plaintiff's situation is within the spirit and rationale of the Falcone case, his cause of action is entitled to judicial review.

AS TO WHETHER THE COURT SHOULD INTERVENE.
It appears to be the rule generally that the exclusion of a physician or surgeon from practicing in a private hospital is a matter which rests in the discretion of the managing authorities. Annotation, "Hospital-Physician-Discrimination," 24 A.L.R.2d 850, 852. Only where the trustees of the private hospital have abused their discretion may the court intervene to grant relief. Van Campen v. Olean General Hospital, 210 App. Div. 204, 205 N.Y.S. 554, 555 (1924), affirmed per curiam 239 N.Y. 615, 147 N.E. 219 (Ct. App. 1925), and cited in Joseph v. Passaic, etc., 38 N.J. Super. 284, 289 (App. Div. 1955).
Although plaintiff concedes the status of the Newcomb Hospital as a private hospital, he argues that the scope of the Falcone case is not confined to medical societies or other similar membership groups as such, but applies equally to a private hospital and to its medical staff, especially when its status and operations are affected with a public interest to the extent that it was stipulated to exist at the Newcomb Hospital.
This court concludes that the ruling in the Falcone case is applicable to private hospitals (and their medical staffs) that are affected with a public interest, in order to determine whether their status and operations are such as to permit judicial scrutiny of their actions in excluding or expelling physicians or surgeons from their medical staffs.
Presumably the trustees of Newcomb Hospital ultimately control the selection and qualifications of the members of its medical staff. Otherwise their action in delegating that ultimate control to its medical staff is void as an abuse of their fiduciary discretion as to who may use the hospital and its facilities. Ware v. Benedikt, 225 Ark. *156 185, 280 S.W.2d 234 (Sup. Ct. 1955); Restatement, Trusts, section 171.
In the final analysis, through the medium of its medical staff, whose membership it controls, the Newcomb Hospital has the nature of a membership entity or organization which in any given occasion attempts to exclude or admit individuals to its medical staff pursuant to its bylaws. It is, therefore, an organization within the rationale and purport of the decisions of the Falcone case, supra.
The Newcomb Hospital is the only hospital within the entire metropolitan area of the City of Vineland, which city is the largest, or one of the largest, in area in the State of New Jersey. The metropolitan area also includes Malaga, Franklinville, Norma, Alliance, East Vineland, North Vineland, Landisville, Minetola, Buena, Richfield and Newfield.
The certificate of incorporation of Newcomb Hospital provides in section 3B that the hospital shall be used first, for the care, nurture and maintenance of sick and injured persons residing in the Borough of Vineland and Township of Landis (including the City of Vineland); second, for the care, etc., of sick and injured persons residing in the vicinity of Vineland aforesaid; and thereafter for the care, etc., of such other sick and injured persons as the facilities of the hospital will permit.
In other words, the trustees have no discretion to refuse to admit all members of the public in the order aforesaid, provided there are sufficient facilities, and provided the sick or injured person complies with any reasonable term or condition established by the trustees.
Secondly, the Newcomb Hospital is a non-profit private corporation because any profit accruing from its operation must be invested for or applied toward the maintenance, betterment or addition to, improvement and enlargement of the buildings, grounds and equipment, or the increasing of the endowment fund. Ibid., section 3B, last sentence.
*157 Thirdly, the Newcomb Hospital has received, or is receiving, public funds for the purposes hereinbelow mentioned:
(1) a fund each year from the City of Vineland for the treatment of indigent patients of the said city.
(2) funds from the County of Cumberland on a per diem basis for the care and treatment of indigent patients from the other areas in the county.
It solicits and receives other funds from the public. Consequently, it may be regarded as a public charity, whether its corporate character is public or private, even though it receives pay patients as well as charity patients. 26 Am. Jur., section 3, pages 588, 589.
Lastly, the Newcomb Hospital permits the utilization of its facilities and services by physicians and surgeons trained and skilled in generally accepted, and generally received, scientific medical principles and practices; that is to say, there is no indication of record that its facilities or services are utilized exclusively for specialized medical practices such as that pertaining to the stomach, the eye and ear, or other restricted or localized areas of the anatomy.
It is clear, therefore, that the defendant Newcomb Hospital has assumed the position and status of the only general hospital open to the public within the convenient accessibility of the inhabitants of the metropolitan area of Vineland (including Newfield), many of whom no doubt either would qualify as recipients of indigent relief from the City of Vineland or the County of Cumberland, or would contribute or have contributed to its establishment or maintenance.
Consequently, this court is of the opinion that the Newcomb Hospital (and the medical staff thereof) is an organization which exercises entire control of hospital facilities and services, and the practice of medicine therein, within the entire metropolitan area of Vineland  a control which carries with it certain public responsibilities which it should not be permitted to shirk by assuming the status of a *158 private hospital. See the Falcone case, 62 N.J. Super., at page 199.
Therefore, this court is of the opinion that the Newcomb Hospital and the medical staff thereof is an organization of such a nature that this court should intervene to protect the public.

AS TO WHETHER SUBSTANTIAL INJURY WILL RESULT.
The plaintiff is fully licensed to practice medicine and surgery in New Jersey by the New Jersey State Board of Medical Examiners. The plaintiff is also fully qualified to practice medicine and surgery in the States of New York, Michigan and Florida.
He began his medical practice in the City of Vineland in July 1959, but also expanded his medical practice into Newfield on November 15, 1959 in an office at a distance of approximately 4 1/2 miles from his former office in Vineland. Until January 1962 he also practiced from his home in Vineland.
The plaintiff is the only licensed physician in Newfield which has a population of approximately 4,500. He is the plant physician for the Shield Alloy Corporation of Newfield which has 125 employees engaged in heavy industrial work. He is the plant physician for another company which manufactures glassware and has over 30 employees. He is also the physician for a Newfield public school and for the Catholic school in Newfield, which have a combined enrollment of approximately 400 students.
Since the plaintiff is not allowed to admit patients to Newcomb Hospital, nor to serve or attend them professionally once they are admitted, and to use the emergency room services of the hospital, the plaintiff has sustained severe economic loss. See the Falcone case, 62 N.J. Super., at page 200. The court is also aware of the embarrassment and stigma visited on the plaintiff, which necessarily arise from his deprivation of hospital facilities and services in the Newcomb Hospital. Ibid., page 200.
*159 The fact that the plaintiff is allowed to admit his patients to the Newcomb Hospital by referring them to a doctor who is a member of its medical staff, and to visit them during visiting hours, is hardly a fair substitute for the full use of the hospital facilities and services. The plaintiff cannot prescribe for or treat his patient, nor read the chart, nor conduct a physical or medical examination, nor apply his former knowledge of the patient's condition.
Further, the fact that Newfield is 7 1/2 miles from a hospital in the municipality of Elmer, which now admits osteopathic physicians to its medical staff, is not controlling. The plaintiff's patients may prefer Newcomb Hospital to the Elmer Hospital; the facilities and services of Newcomb Hospital may be more desirable and more extensive than those of the Elmer Hospital; the prospective patients of the plaintiff may reside much nearer to Newcomb Hospital than to the Elmer Hospital; lastly, Dr. Greisman himself resides approximately one mile from the Newcomb Hospital.
It is readily apparent, that the plaintiff has been substantially injured by way of economic loss by reason of his exclusion.
Having established that the facts justify judicial scrutiny of plaintiff's exclusion, this court must proceed to determine:
(1) Whether the defendants Newcomb Hospital and the medical staff thereof applied proper procedural safeguards;
(2) Whether the defendants acted in accordance with its own laws;
(3) And if the answers in (1) and (2) are in the affirmative, whether the defendant's laws, as they apply to the plaintiff Dr. Greisman, were reasonable and consistent with public policy. See Falcone, 62 N.J. Super., page 197.
(1) It has been held in other jurisdictions that once a hospital establishes its status as a private hospital, it may in the exercise of reasonable discretion exclude any physician from practicing therein without formal charges being brought, without a hearing, and without any reasons being assigned for such exclusion. See Loewinthan v. Beth *160 David Hospital, 9 N.Y.S.2d 367 (Sup. Ct. 1938); Glass v. Doctors Hospital, 213 Md. 44, 131 A.2d 254 (Ct. App. 1957); Wolf v. La Crosse Lutheran Hospital Ass'n, 181 Wis. 33, 193 N.W. 994 (Sup. Ct. 1923).
In the matter sub judice the plaintiff was informed on two different occasions by letter from James R. Pepper, Administrator of the Newcomb Hospital, that under the existing bylaws of the Newcomb Hospital and its medical staff thereof he did not qualify for the medical staff.
It would thus appear that procedural due process had been complied with.
(2) Article III, section 4, paragraph A, of the bylaws of the defendants Newcomb Hospital and medical staff requires that an
"Applicant for membership to the Courtesy Staff shall, in writing, make such request [for appointment] including his licensure, medical education, and other pertinent information he may deem important to his request. He shall have fulfilled the basic requirements for admission to the Courtesy Staff before making such application  this to be sent to the administrator, who shall submit it to the Secretary of the Medical Staff." (Emphasis added)
The "basic requirements" referred to above are, of course, the preliminary qualifications listed in Article III, section (1), paragraph 1, of the bylaws of the medical staff and Newcomb Hospital as aforesaid.
The above-quoted excerpt from section 4 clearly requires an applicant to have fulfilled the basic requirements (preliminary qualifications) for admission to the courtesy staff before making application for appointment to the medical staff, i.e., the courtesy staff thereof.
Dr. P.A. Ruggeri, Chief of Medicine of the Medical Staff of the Newcomb Hospital, in his affidavit deposes and says that he directed a letter to Dr. Walter S. Wiggins, Secretary of the American Medical Association, inquiring whether the Philadelphia School of Osteopathy was or is approved by the American Medical Association as a medical school, and that Dr. Wiggins replied as of May 11, 1962 *161 that the aforesaid school is not now and has not been approved by the American Medical Association. (Copies of these letters are attached to the affidavit.)
Secondly, Dr. Ruggieri stated further that he is also a member of the Cumberland County Medical Society and knows of his own knowledge that the plaintiff is not a full or an associate member of that society.
Clearly, then, the plaintiff has not fulfilled the basic requirements in two respects prior to making the application for membership.
These qualifications appear to be mandatory in character. Section (1) of article III uses the phrase "shall be a graduate etc.," and section 4A of article III uses the phrase "He shall have fulfilled the basic requirements" before applying for membership. (Emphasis added)
Consequently, it appears that the committee on admissions rightfully concluded, insofar as the procedure for appointment was concerned, that plaintiff was not entitled to an interview and to submit a formal application pursuant to article III, sections 4C and 4D.
Therefore, the record establishes that the defendants have acted in accordance with their bylaws in denying an interview and application to the plaintiff.
(3)(a) The bylaw of the defendants requiring membership in the county medical society (Cumberland) is clearly unreasonable and offensive to public policy. See the Falcone case, 62 N.J. Super., at page 202. The court in Falcone stated that it is in the interest of the State that all physicians and surgeons be given the opportunity to prove their qualifications to a hospital without the necessity of first establishing membership in a county medical society as a basic qualification for an opportunity to display their talents as physicians. Ibid., page 202.
There is also dictum in a case outside New Jersey that if a hospital bylaw required membership in a county medical society, such requirement involved an invalid delegation (by the trustees of the hospital) to the medical society, of the *162 power to determine who may use the hospital. See Ware v. Benedikt, 225 Ark. 185, 280 S.W.2d 234 (Sup. Ct. 1955).
Plaintiff being fully licensed to practice medicine and surgery in New Jersey, it is in the interest of the State that he should be given the opportunity to prove his qualifications to the Newcomb Hospital without the necessity of first establishing membership in the Cumberland County Medical Society.
(b) The bylaw of the defendants requiring that an applicant for membership to the (courtesy) medical staff be a graduate of a medical school approved by the American Medical Association is also unreasonable and inconsistent with the public policy of New Jersey, as applied to the plaintiff Dr. Greisman.
The plaintiff, as aforestated, has been admitted to the practice of medicine and surgery in the State of New Jersey; therefore, by virtue of such licensure he is entitled to practice medicine and surgery to the same extent as every other licensed physician in this State. See the Falcone case, 62 N.J. Super., at page 207.
And it is too plain for dispute that what the lower court in Falcone was referring to as being "admitted to the practice of medicine and surgery in this State to the same extent as every other licensed physician" was the customary use of hospital facilities and services in the hospitals of this State, because that is what Dr. Falcone was ultimately seeking to acquire in his suit against the Middlesex County Medical Society. (Emphasis added)
Furthermore, since the decision in the Falcone case, the Joint Commission on Accreditation of Hospitals has indicated that the presence on hospital medical staffs of doctors of osteopathy having full licenses as physicians and surgeons will not jeopardize, per se, accreditation of such hospitals by the American Medical Association.
Secondly, the Judicial Council of the House of Delegates of the American Medical Association has, since the decision *163 in Falcone, adopted a statement of policy whereby local medical societies were authorized to practice with doctors of osteopathy where they (the local societies) determined that such doctors practiced on the same scientific principles as those adhered to by the members of the American Medical Association.
Lastly, the local determination required by the Judicial Council of the House of Delegates of the American Medical Association as aforesaid was supplied by a resolution of the Judicial Council of the Medical Society of New Jersey on July 12, 1961, in which it was declared that "hereafter in New Jersey it shall not be unethical for members of the Medical Society of New Jersey to enter into voluntary professional association with any person holding a full license as a physician and surgeon granted by the State Board of Medical Examiners of New Jersey who adheres to the same scientific principles embraced by the members of the Medical Society of New Jersey."
There is nothing of record to indicate that the plaintiff, Dr. Greisman, does not adhere to the same scientific principles embraced by the members of the Medical Society of New Jersey.
In fact, it may be fairly inferred that he does, because he is the physician for two industrial companies and two schools and possesses a full medical licensure from the State of New Jersey.
In any event, this is a proper inquiry of the committee on admissions of the Newcomb Hospital and the medical staff thereof, who would conduct the interview with the plaintiff.
Thus, not only is it clear that the public policy of the State is somewhat adverse to the aforesaid bylaw of the defendants, but it also appears that (1) the American Medical Association and the New Jersey Medical Society have no objection to voluntary association between osteopathic doctors who possess the required qualifications (as plaintiff does) and other medical doctors, and (2) the Newcomb *164 Hospital will suffer no loss of accreditation by admitting the plaintiff to its medical staff, provided he possesses the necessary medical expertise.
It is quite obvious, therefore, that the bylaw requiring an applicant to the medical staff of Newcomb Hospital to be a graduate of an American Medical Association approved medical school, as it applies to the plaintiff Dr. Greisman, is arbitrary and capricious in not being designed for, or related to, the advancement of medical science, or the elevation of professional standards, but runs counter to the public policy of our State and the true interests of justice. See Falcone, 34 N.J., at page 598.
In reaching this decision this court feels and believes that it has protected the public welfare and advanced the interests of justice by reasonably safeguarding the opportunity of Dr. Greisman for earning a livelihood while not impairing the proper standards and objectives of the Newcomb Hospital and its medical staff. See Falcone, 34 N.J., at page 592.

SUMMARY.
The Newcomb Hospital and its medical staff is an organization within the rationale and purport of the decision in Falcone v. Middlesex County Medical Society, 62 N.J. Super. 184 (Law Div. 1960), affirmed 34 N.J. 582, 598 (1961).
The defendant Newcomb Hospital (and the medical staff thereof) has assumed the position and status of the only general hospital open to the public within the convenient accessibility of the inhabitants of the entire metropolitan area of Vineland (including Newfield, where the plaintiff also conducts his practice), many of whom, no doubt, either would qualify as recipients of the indigent relief provided by the City of Vineland and the County of Cumberland, or would contribute or have contributed to its establishment or maintenance. It is an organization of such a *165 nature that this court should intervene to protect the public. See Falcone, 62 N.J. Super., at page 197.
Secondly, the plaintiff is the only fully licensed physician in Newfield; he is the plant physician for two industrial companies; he is the school physician for two schools in Newfield; and he conducts a part of his practice within the City of Vineland. By not being allowed to admit his patients to Newcomb Hospital, nor to serve or attend them professionally once they are admitted, and to use the emergency room services of the hospital (privileges accorded members of the courtesy medical staff), the plaintiff has suffered severe economic loss, and has been and will continue to suffer humiliation and embarrassment by the failure to secure those facilities customarily available to general practitioners. Consequently, the plaintiff has and will sustain substantial injury in being excluded from the medical staff of the Newcomb Hospital. See Falcone, 62 N.J. Super., at page 197.
The foregoing findings justify judicial scrutiny of the actions of the defendants in excluding the plaintiff from their medical staff. See Falcone, 62 N.J. Super., at page 197.
The Newcomb Hospital has not violated procedural due process in refusing to issue a formal application to the plaintiff, and has acted in accordance with its bylaws in refusing to issue a formal application to the plaintiff. However, the bylaw of defendants which purports to require membership in the Cumberland County Medical Society as a basic requirement or preliminary qualification for admission to the medical staff of the Newcomb Hospital is void per se as contrary to the public policy and public welfare of our State. See Falcone, 62 N.J. Super., at page 202.
Secondly, the bylaw of defendants which purports to require the plaintiff Dr. Greisman to be a graduate of a medical school approved by the American Medical Association, insofar as it applies to the plaintiff, contravenes the *166 public policy of this State and the true interests of justice for the reasons expressed.

CONCLUSION.
The judgment of this court is that summary judgment be denied as to the defendants and granted as to the plaintiff to the following effect and in the following manner:
(1) The bylaw of the defendants which purports to require membership in the county medical society (Cumberland) as a basic requirement (preliminary qualification) for admission to the medical staff of the Newcomb Hospital is void per se and of no effect whatsoever as contrary to the public policy of our State.
(2) The bylaw of defendants which purports to require the plaintiff Dr. Greisman to be a graduate of a medical school approved by the American Medical Association, insofar as it applies to the plaintiff, contravenes the public policy of this State and the true interests of justice.
Therefore, the defendants Newcomb Hospital and the medical staff thereof are hereby ordered to proceed to issue and to consider the application for membership to the courtesy medical staff by the plaintiff Dr. Greisman, in accordance with its remaining valid bylaws, as if the plaintiff had fulfilled the basic requirements for admission to the courtesy staff pursuant to article III, section 1, of their respective bylaws.
Submit order.