**Dr. Stephen BURKHART, Appellant**

v.

**COMMUNITY MEDICAL CENTER et al., Appellees.**

Court of Appeals of Kentucky.

March 22, 1968.

As Modified on Denial of Rehearing Oct. 18, 1968.

William B. Byrd, Paducah, for appellant.

B. M. Westberry, Marion, Raymond B. Dycus, Smithland, for appellees.

EDWARD P. HILL, Judge.

This is an appeal from a judgment of the Livingston Circuit Court which dismissed appellant's complaint with amendments for failure to state a claim upon which relief could be granted.

The facts are as follows: Appellant, Dr. Stephen Burkhart, is a practicing physician in Livingston County. He instituted this action against the Community Medical Center and its Board of Trustees demanding injunctive relief because they refused to permit him to use the facilities of the hospital and refused to admit his patients.

Appellees moved to dismiss the complaint for failure to state a claim upon which relief can be granted. The trial court heard argument on the motion and gave appellant ten days to amend his complaint and to state whether or not appellee is a public institution in that it is or is not supported by tax funds. Appellant then filed an amendment to his complaint and appellee again moved to dismiss; this time on the ground that appellant failed to comply with the court's order to amend his complaint. At this time, before any ruling could be made on appellee's second motion to dismiss, appellant filed a notice of appeal to this court stating that he was appealing from that part of the trial court's order which sustained appellee's motion to dismiss for failure to state a claim and granted appellant ten days to amend his complaint. The trial court then entered an order holding the case in abeyance pending the outcome of the appeal.

This court, in an opinion rendered March 25, 1966, (not reported officially) dismissed the appeal as premature because the order appealed from was not final or appealable.

Appellant then tendered a second amended complaint, and the trial court ruled on the motion to dismiss the first amended complaint, which had been held in abeyance. In sustaining this motion, the court said that there was no showing that appellant had any right to practice medicine in the Medical Center; that such a right could only exist if the Center were a public facility; that the test of a public facility is whether it is supported by tax funds; that there is no showing that it is supported by tax funds; and that there is no showing that the board acted arbitrarily or unreasonably. For these reasons, no cause of action was found to exist. The court relied on Hughes v. Good Samaritan Hospital, 289 Ky. 123, 158 S.W.2d 159 (1942).

Appellant then moved for leave to file his second amended complaint. This motion was overruled.

Appellant appeals again and raises only the question of whether the amended complaint states a claim upon which relief can be granted.

■ Appellant presents his argument as follows. First, he states that for the purpose of the motion to dismiss for failure to state a claim, the averments must be taken as true and admitted and the complaint should not be dismissed unless it appears to a certainty that plaintiff would not be entitled to relief under any statement of facts which could be proved in support of the claim. With this we agree. At the same time, however, as appellee argues, it must disclose a justiciable claim. Security Trust Co. v. Dabney, Ky., 372 S.W.2d 401 (1963).

Appellant's complaint alleges that this is a public hospital and that he, therefore, has a "vested right" to use its facilities. In the alternative, he alleges that even if it is a private institution then "he has been granted, and now has, the rights and privileges set out above," and that he is being wrongfully deprived of them.

Appellant's complaint also alleges that "Community Medical Center is an unincorporated public association" having as its purpose the operation of "a public community hospital," the Salem Community Hospital, the only hospital in Livingston County; that "all citizens and residents of the Salem community and Livingston County, including plaintiff's patients, are entitled, as a matter of right, to admittance into and the use and benefit of" the hospital; that defendants "have arbitrarily and capriciously undertaken to illegally and wrongfully bar" plaintiff from practicing medicine in the hospital.

Appellant also alleges in his second amended complaint (which the court declined to allow to be filed, but which was apparently considered by the court in its judgment sustaining motion to dismiss the complaint and two amendments) that the Community Medical Center "was organized by the citizens of the Salem community and built by funds solicited from and contributed

by them and, at all times referred to herein, same has been and is a public institution sponsored, financed, owned, managed, and maintained by, for and on behalf of the Salem community and the residents thereof in all respects as completely and fully as if same were supported by tax funds and as completely and fully as it is possible for the community and its citizens so to do." And " * * * activities of the defendants * * * were and are wrongful, wilful, malicious, unreasonable, arbitrary and capricious."

Appellant takes the position on this appeal that he stated a justiciable claim in his pleadings and that the trial court erred in dismissing them.

In the resolution of this question, we start with a liberal rule of construction embodied in CR 8.01, which requires a "short and plain" statement of the claim showing that the pleader is entitled to relief and a demand for judgment. Nevertheless, in Clay's Kentucky Practice, Volume 6, under Author's Comments, Rule 8.01, it is written that:

"This is not to say that the underlying principles of stating a cause of action are not to be observed. The basic elements thereof must still be fairly shown, i. e., (a) a primary right of the plaintiff, and (b) a wrong of the defendant which breaches the right and results in damage."

The sufficiency of the pleadings herein requires scrutiny of the rights, if any, of appellant to send his patients to and to practice medicine in appellees' hospital. The privilege of admitting patients to hospitals and of being able to practice medicine and surgery therein is generally designated as "staff membership," or being on the staff of a hospital.

This court has had only one occasion to write on the right of a physician to staff membership in a hospital. That was in Hughes v. Good Samaritan Hospital, supra, wherein this court followed the great weight of authority and held that the

action of a private hospital in refusing or revoking staff membership will not be disturbed by the courts. Cf. West Coast Hospital Ass'n. v. Hoare, Fla., 64 So.2d 293; Van Campen v. Olean General Hospital, 239 N.Y. 615, 147 N.E. 219; and Levin v. Sinai Hospital of Baltimore City, 186 Md. 174, 46 A.2d 298; Edson v. Griffin Hospital, 21 Conn.Sup. 55, 144 A.2d 341; Natale v. Sisters of Mercy of Council Bluffs, 243 Iowa 582, 52 N.W.2d 701; Leider v. Beth Israel Hospital Ass'n, 11 N.Y.2d 205, 227 N.Y.S.2d 900, 182 N.E.2d 393; State ex rel. Sams v. Ohio Valley General Hospital Association, 149 W.Va. 229, 140 S.E.2d 457; and Weary v. Baylor University Hospital, Tex.Civ.App., 360 S.W.2d 895. Apparently New Jersey stands alone in adopting a different rule. Cf. Raymond v. Cregar, 38 N.J. 472, 185 A.2d 856, and Greisman v. Newcomb Hospital, 76 N.J.Super. 149, 183 A.2d 878.

Some decisions have distinguished between private and public hospitals in this connection and have permitted a limited court review in such matters in cases of public hospitals. See Rosner v. Eden Township Hospital District, 58 Cal.2d 592, 375 P. 2d 431; North Broward Hospital District v. Mizell, Fla., 148 So.2d 1; Dayan v. Wood River Township Hospital, 18 Ill.App.2d 263, 152 N.E.2d 205; Alpert v. Board of Governors of City Hospital, 286 App.Div. 542, 145 N.Y.S.2d 534.

There is also respectable authority for the proposition that the right of staff membership in a hospital will be protected in case of a conspiracy of the hospital authorities to exclude a staff member. Cf. Willis v. Santa Ana Community Hospital Ass'n, Cal. App., 20 Cal.Rptr. 466, 471, from which we quote:

"What we do hold is that the law affords redress to any victim of a combination which has for its purpose and does act with malicious intent through coercive and oppressive methods; to prevent the proper use by qualified persons of hospital facilities; to restrict legitimate

consultation between doctors; to indicate falsely to the public that such facilities are denied the victim because of the victim's questionable professional or personal conduct or qualifications when in truth and in fact the victim's conduct and qualifications are of the highest order; and that the Courts should be and are open to afford such redress in a properly proven case."

While there is no allegation of conspiracy in the pleadings in the instant case, there is an allegation that the acts complained of were "wrongful, wilful, malicious, unreasonable, arbitrary, and capricious." This coupled with the fact that this is the only hospital in the county may bring this case within the rule announced in *Willis*, supra.

When we contemplate the development of the law pertaining to the right of physicians to staff membership in hospitals, it is well to remember that during the early period of the formation of this law, many physicians had little occasion or opportunity to practice their profession in a hospital. They had offices and made house calls, which is a rare occurrence today. An interesting article appeared in Washington University Law Quarterly (1966) entitled "The Physician's Right to Hospital Staff Membership: The Public-Private Dichotomy," from which we quote the "Conclusion" beginning on page 510:

"It is no longer open to question that to practice medicine successfully, a doctor requires access to hospital facilities. The complexity of modern medicine and advance diagnostic techniques makes the use of hospital facilities mandatory for proper diagnosis and treatment of disease. But in order to take advantage of these facilities, a physician or surgeon must be on the medical staff of a hospital. If a physician is not allowed to use hospital facilities, his medical career is greatly limited. His income may drop precipitously and he may become nothing more than a referral service for those physicians who do have staff privileges. In addition to its monetary value, staff membership is a matter of prestige. A physician gains prestige with every appointment he receives and, conversely, loses it with every rejection or expulsion. Rejections are permanent blots on a physician's record which follow him wherever he goes. Each hospital to which he applies for staff membership wants to know what action has been taken by other hospitals, and each rejection, for whatever reason, is held against him.

"Furthermore, there are some situations in which staff membership in a *particular* hospital is crucial, as in a town with only one hospital. In such a case, if the physician is refused staff privileges, he is out of a job. The board of directors of that one hospital has the power of professional life and death over every physician or surgeon who wishes to remain in the community."

We do not attempt to announce any rule of law that may or may not be applied to the facts of this case. We do not know the facts. We merely say that under our liberal rules of pleading, the majority of this court is of the opinion that appellant pleaded sufficient facts to get a foot inside the door of the court.

For an interesting discussion of the distinction between private and public hospitals see Shulman v. Washington Hospital Center, D.C., 222 F.Supp. 59 (1963).

The judgment is reversed for proceedings consistent herewith.

WILLIAMS, C. J., and MILLIKEN, STEINFELD and PALMORE, JJ., concur.

OSBORNE, J., not sitting.

MONTGOMERY, J., dissents.